UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 09 CR 10264 EFH |
| ) | VIOLATIONS: |
| v. ) | 18 U.S.C. § 666(a)(1)(B) |
| ) | (Federal Program Bribery) |
| JOSEPH L. VASAPOLLO, JR., ) | 18 U.S.C. § 1951 |
| ) | (Attempted Extortion Under Color |
| Defendant. ) | of Official Right) |
| ) | 18 U.S.C. § 981 and 28 U.S.C. § 2461 |
| | (Forfeiture) |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### General Allegations

1.      At all times material to this Indictment, the defendant, Joseph L. Vasapollo, Jr. ("VASAPOLLO"), was a resident of Brockton, Massachusetts. From in or about 2003 to the present, he has served as Superintendent of Buildings of the City of Brockton, in which position he has received an annual salary.

2.      At all times material to this Indictment, the City of Brockton ("Brockton" or "the City") was a municipality of the Commonwealth of Massachusetts. In the year 2008, Brockton received benefits in excess of $10,000 in Federal programs and assistance.

3.      At all times material to this Indictment, "Corporation A" was a Massachusetts corporation in the business of environmental remediation. Corporation A specialized in the removal of asbestos, lead, mold and other hazardous materials from public and commercial buildings in cities such as Brockton, New Bedford, and Fall River. At all times material to this Indictment, Corporation A did business in interstate commerce.

4.      At all times material to this Indictment, "Contractor A" was the president and majority shareholder of Corporation A, and oversaw its operations.

5. At all times material to this Indictment, Brockton City Hall ("City Hall") was a building owned and maintained by the City of Brockton.

6. At all times material to this Indictment, the Brockton War Memorial Building was a building owned and maintained by the City of Brockton. Since its construction in 1930, the building has served as a meeting place for veterans groups, as well as the home of the Brockton Symphony Orchestra. At times material to this Indictment, the City was restoring the War Memorial Building so that it may serve as a regional performing arts center which would do business in interstate commerce.

## VASAPOLLO'S Official Authority

7. As Superintendent of Buildings, VASAPOLLO headed the Building Department, an agency of the City.

8. The purpose of the Building Department was to oversee the construction, alteration, repair, and maintenance of buildings owned by the City. The Department also was responsible for enforcing city zoning and building codes by inspecting construction sites in the City, and was authorized to issue permits for, and to certify, such construction sites.

9. The Department employed approximately thirty individuals, including building inspectors, office staff, custodians, and tradesmen.

10. Among his duties as Superintendent, VASAPOLLO was responsible for approving the specifications, contracts, and plans for construction, alteration and repairs to city-owned buildings. As VASAPOLLO knew, the contracting process was subject to state procurement law, which, for certain projects, required the City to undertake a formal bidding process. Contracts requiring the City to pay $5,000 or more for goods or services were subject to

review by the City's Chief Procurement Officer, and in some instances, the City Solicitor, the Mayor or the City Council.

11. As VASAPOLLO knew, the procurement of goods or services valued at under $5,000 was not required to be reviewed or approved by the Chief Procurement Officer, and ordinarily would not come to the Chief Procurement Officer's attention. Rather, as Building Superintendent, VASAPOLLO had full discretion to approve the payment for goods and services valued under $5,000. VASAPOLLO routinely approved such payments by signing a purchase order for the goods or services, and submitting the signed order to the City, which in turn paid the vendor of such goods or services by check.

### Kickbacks for Work at the War Memorial Building

12. Beginning in 2003 and continuing through 2006, VASAPOLLO oversaw mold and asbestos removal work performed by Corporation A at buildings owned by the City of Brockton, including City Hall.

13. In or about May 2007, VASAPOLLO told Contractor A that he would seek out more projects in the City for Corporation A to perform.

14. In or about September 2007, VASAPOLLO called Contractor A and told him that he wished to show Contractor A a potential asbestos removal project at the War Memorial Building.

15. On or about September 17, 2007, VASAPOLLO escorted Contractor A through the War Memorial Building so that Contractor A could identify areas that contained asbestos. Along the way, Contractor A noted several heating pipes and windows that were lined with insulation containing asbestos, as well as certain asbestos-based floor tiles. VASAPOLLO told Contractor A that it would be necessary to "cut the jobs up" so that each proposal would be under

3

$5,000, thereby enabling VASAPOLLO to approve payment for the work without alerting or seeking the approval of the City's Chief Procurement Officer.

16. Based on their earlier course of dealing in connection with Corporation A's work at City Hall, wherein Contractor A had kickbacked cash to VASAPOLLO for abatement work that VASAPOLLO approved, Contractor A understood VASAPOLLO'S directive to divide the War Memorial Building artificially into several invoices under $5,000 as an invitation to Contractor A to make further kickbacks.

17. On or about September 20, 2007, in a phone conversation with Contractor A, VASAPOLLO reiterated that the proposals should be "kept under the threshold" of $5,000.

18. In or about September 20, 2007, in keeping with VASAPOLLO'S directive, Contractor A submitted to VASAPOLLO four proposals for asbestos removal work at the War Memorial Building, ranging in price from $4,185 to $4,950. VASAPOLLO then approved the work to be performed on three of these proposals.

19. In or about October 2007, Corporation A performed the work described in two of the proposals, and submitted invoices in the amounts of $4,700 and $4,950 to VASAPOLLO that requested payment from the City.

20. On or about November 2, 2007, VASAPOLLO approved payment of the $4,700 invoice.

21. On or about November 5, 2007, VASAPOLLO approved payment of the $4,950 invoice.

22. On or about November 8, 2007, Corporation A performed the asbestos abatement work at the War Memorial Building described in the third proposal, and submitted an invoice to the City in the amount of $4,900.

23. On or about November 15, 2007, VASAPOLLO delivered a check to Contractor A from the City of Brockton made payable to Corporation A for $9,650 as payment for the first two invoices, by handing it to Contractor A in the parking lot of the Foxy Lady adult entertainment club in Brockton. VASAPOLLO told Contractor A to get in touch with him, and "we'll do it that way." Contractor A understood this to mean that he was to pay a kickback to VASAPOLLO as he did for the City Hall work in 2006.

24. On or about March 27, 2008, VASAPOLLO and Contractor A met at a Dunkin Donuts in Brockton. Referring to their earlier kickback arrangement for the City Hall work, Contractor A stated, "I have something like before, but I didn't want to bring that up." VASAPOLLO responded, "We can do that in the car."

25. Minutes later, Contractor A said, "Let me take care of you quick before you take off." VASAPOLLO responded "Alright," whereupon the two left the restaurant and proceeded into the parking lot.

26. Once in Contractor A's car, VASAPOLLO opened the glove compartment and removed an envelope containing $1,000 in cash, prompting VASAPOLLO to comment, "Okay, great."

27. Reaffirming his desire to approve new projects in which they could arrange for further kickbacks, VASAPOLLO declared, "I want to do something else with you, too."

28. On or about April 4, 2008, VASAPOLLO met Contractor A in Contractor A's car in the parking lot of a Dunkin Donuts in Brockton. Contractor A handed VASAPOLLO an envelope containing $1,500, noting that the payment was in connection with the second invoice. VASAPOLLO then told Contractor A he would find more work for Contractor A for which they could arrange for further kickbacks, declaring, "I gotta start thinking of some other things you

5

need to do." VASAPOLLO asserted that they should "keep the flow, and make a couple of bucks on the side."

29. On or about May 19, 2008, VASAPOLLO approved payment by the City in the amount of $4,900 for the third War Memorial Building invoice.

30. On or about June 4, 2008, the City mailed a check to Corporation A in the amount of $4,900 to Corporation A in payment of the third invoice.

31. On or about December 10, 2008, VASAPOLLO met Contractor A for lunch at a Pizzeria Uno restaurant in Brockton. At the end of the meal, the two proceeded to Contractor A's car, where Contractor A handed VASAPOLLO an envelope containing $1,500 in cash, noting that the payment was in connection with the third invoice. VASAPOLLO then commented, "We did three, but I, I, I'll get another one, even if there's a few small ones in there, I mean, just to keep it, keep it going."

## COUNT ONE
### (Attempted Extortion Under Color of Official Right)

32. The Grand Jury re-alleges and incorporates paragraphs 1 through 31 of this Indictment as if fully set forth herein.

33. On or about March 27, 2008, in the District of Massachusetts, the defendant,

**JOSEPH L. VASAPOLLO, JR.,**

did knowingly attempt to affect commerce and the movement of articles and commodities in interstate commerce, by means of extortion under color of official right, and attempted so to do, in that the defendant obtained a cash payment in the amount of $1,000 from Contractor A, knowing that the payment was tendered in exchange for VASAPOLLO'S approval on behalf of the City of Brockton of an invoice for asbestos abatement work performed by Corporation A at the Brockton War Memorial Building, which payment was not legally due to the defendant or to his office, and the consent of Contractor A having been induced and obtained under color of official right.

All in violation of Title 18, United States Code, Sections 1951 and 2.

## COUNT TWO
### (Attempted Extortion Under Color of Official Right)

34. The Grand Jury re-alleges and incorporates paragraphs 1 through 31 of this Indictment as if fully set forth herein.

35. On or about April 4, 2008, in the District of Massachusetts, the defendant,

**JOSEPH L. VASAPOLLO, JR.,**

did knowingly attempt to affect commerce and the movement of articles and commodities in interstate commerce, by means of extortion under color of official right, and attempted so to do, in that the defendant obtained a cash payment in the amount of $1,500 from Contractor A, knowing that the payment was tendered in exchange for VASAPOLLO'S approval on behalf of the City of Brockton of an invoice for asbestos abatement work performed by Corporation A at the Brockton War Memorial Building, which payment was not legally due to the defendant or to his office, and the consent of Contractor A having been induced and obtained under color of official right.

All in violation of Title 18, United States Code, Sections 1951 and 2.

## COUNT THREE
### (Attempted Extortion Under Color of Official Right)

36. The Grand Jury re-alleges and incorporates paragraphs 1 through 31 of this Indictment as if fully set forth herein.

37. On or about December 10, 2008, in the District of Massachusetts, the defendant,

### JOSEPH L. VASAPOLLO, JR.,

did knowingly attempt to affect commerce and the movement of articles and commodities in interstate commerce, by means of extortion under color of official right, and attempted so to do, in that the defendant obtained a cash payment in the amount of $1,500 from Contractor A, knowing that the payment was tendered in exchange for VASAPOLLO'S approval on behalf of the City of Brockton of an invoice for asbestos abatement work performed by Corporation A at the Brockton War Memorial Building, which payment was not legally due to the defendant or to his office, and the consent of Contractor A having been induced and obtained under color of official right.

All in violation of Title 18, United States Code, Sections 1951 and 2.

## COUNT FOUR
### (Federal Program Bribery)

38.  The Grand Jury re-alleges and incorporates paragraphs 1 through 31 of this Indictment as if fully set forth herein.

39.  From on or about March 27, 2008 to December 10, 2008, in the District of Massachusetts, the defendant,

### JOSEPH L. VASAPOLLO, JR.,

being an agent of the City of Brockton, a local government that received benefits in excess of $10,000 under one or more Federal programs involving a grant, contract, subsidy, loan, guarantee, insurance and other forms of Federal assistance in the year 2008, corruptly accepted and agreed to accept a thing of value, namely cash, from another person intending to be influenced and rewarded in connection with a business, transactions and series of transactions of the City of Brockton involving a thing of value of more than $5,000, namely the performance of asbestos removal work by Corporation A at the Brockton War Memorial Building.

All in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

## FORFEITURE ALLEGATIONS
(18 U.S.C. § 981 and 28 U.S.C. § 2461)

THE GRAND JURY FURTHER CHARGES THAT:

40. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1951, the defendant,

### JOSEPH L. VASSAPOLLO, JR.,

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to such violations.

41. If any of the property described in paragraph 40 hereof as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(2)(A), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred to, sold to, or deposited with a third party;

   c. has been placed beyond the jurisdiction of this Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, U.S.C., Section 2461(c), incorporating Title 21, U.S.C., Section 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in subparagraphs a through e, above.

All pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461.

11

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
Jonathan F. Mitchell
Assistant United States Attorney

Date:

District of Massachusetts, September 10, 2009 at

Returned to the District Court by the Grand Jurors and filed.  5:40pm

_____
Deputy Clerk